Portage Mercantile Company, Appellant, *v.* Johnstown Coal & Coke Company, Appellant.

Argued March 27, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

reargument refused May 7, 1947.

*John E. Evans, Sr.,* and *Charles S. Evans,* with them *Evans, Evans & Spinelli,* for defendant.

*Philip N. Shettig,* with him *Edward J. Harkins, Thomas A. Swope* and *Shettig & Swope,* for plaintiff.

OPINION BY MR. JUSTICE LINN, April 14, 1947:

These cross appeals grow out of business relations between plaintiff, Portage Mercantile Company (hereafter called Store company) and defendant, Johnstown Coal & Coke Company (hereafter called Coal company) created by their contract of June 22, 1937. Plaintiff claimed that defendant breached the contract by establishing a store at Trout Run Service Station in Portage Township, and another, the Vindex Stores Inc., in Beaverdale and operating them in competition with plaintiff's store.

The plaintiff conducted a general store with its principal place of business in the borough of Portage. At the time the parties made their contract the defendant

mined coal in Portage Township,[1] which adjoined the borough in Cambria County. Some of the miners employed by the defendant lived in the borough and some in the township; all were patrons of plaintiff's store. The agreement provided, inter alia, that "the Coal Company for a period of five (5) years from July 1st, 1937, agrees to collect exclusively for the Store Company such of its accounts against the employees of the Coal Company as have been ordered by said employees to be collected from their semi-monthly pays. The deductions from any wages so assigned or directed to be deducted shall be made from any balance due such employees after deducting all fixed charges of the Coal Company such as check-off, Union dues, rents, doctor, powder and oil, smithing, etc., lights, water, and taxes.

"The Store Company agrees to pay to the Coal Company in consideration for the collections made a sum equal to seven (7%) per centum of its total gross sales made during each semi-monthly period for which the collections are made. For the purpose of determining the amount due for making the collections, the Store Company shall furnish to the Coal Company at the end of each semi-monthly period a statement showing its total gross sales made during said semi-monthly period and at the same time furnish to the Coal Company a statement of the amounts to be collected from its several employees. The Store Company further agrees that the Coal Company may at any reasonable time or times have access to and examine its books and records to determine the total amount of the gross sales of the Store Company, and the Coal Company agrees that the Store Company may at any reasonable time or times have access to and examine its books and records at its mine office to determine the earnings and credit risks of its employees.

---

[1] Two years later, defendant acquired and operated a mine in Summerhill Township, six miles from Portage.

"At each semi-monthly pay or within three (3) days thereafter the Coal Company shall deduct from the moneys so collected a sum equal to seven (7%) per centum of the total gross sales of the Store Company for the period for which the collections were made and pay over the balance thereof to the Store Company.

"The Store Company agrees during the continuance of this lease [?] to conduct a general department store handling meats, groceries, furniture, clothing and other merchandise usually handled by a department store in a like community, and also agrees to operate a filling station selling oil, gas and auto accessories, but agrees that it will not, without the written consent of the Coal Company, handle and sell any powder or other explosives used in the mining of coal, and during the same period the Coal Company agrees not to conduct a store business in competition with the Store Company and agrees that it will use its best efforts to secure for the Store Company the trade, business and good will of its officials and employees as well as that of the public generally.

"It is further understood and agreed that the Coal Company reserves the right to buy such supplies and materials as are used in the conduct of its business from such manufacturers or dealers as it may see fit or that it may purchase from the Store Company such supplies and materials or any portion thereof at cost plus five (5%) per centum.

"It is further understood and agreed that the Coal Company shall collect only such accounts as it may legally collect under the laws now in force or hereafter enacted or determined, and that in case the Coal Company is required to return any monies collected under the terms hereof, the Store Company shall reimburse it to the extent of such returned collections.

"It is further understood and agreed that this agreement shall continue in force for a period of five (5) years from the effective date hereof unless within that period the Coal Company shall sell its mining plant. . . ."

In 1941 the plaintiff filed its bill alleging defendant's breach of contract by competing with plaintiff, by no longer collecting exclusively for plaintiff and in other respects. Plaintiff asked that (a) defendant be restrained [2] from continuing the violation of the agreement, (b) for damages and (c) for an account. Defendant answered on the merits. After trial, the court, agreeing with plaintiff, held that defendant breached the contract by conducting competitive business at Trout Run Service Station (in Portage Township) but, agreeing with defendant, held that the business done at Beaverdale (in Summerhill Township) by Vindex Stores, Inc., was not in violation of the contract. Defendant appealed at No. 14 from the decree for the plaintiff, and plaintiff appealed at No. 55 from the refusal of its claim based on the business of Vindex Stores, Inc.

No. 14. The decree is supported by the facts found below and approved by the court in banc. The court found that defendant by its Trout Run Service Station competed with plaintiff. There is evidence to support the finding. In accord with the contract, the Store company conducted a general department store and operated a filling station selling oil, gas and auto accessories. In February, 1939, "as per our conversation relative to the gasoline pump you wish to install at the mines," the plaintiff wrote to the defendant, "we want to inform you that it will be all right for you to go ahead." Instead of merely installing a gasoline pump for the sale of gasoline, the defendant constructed a general service

---

[2] A preliminary injunction was granted in 1941 and was continued after hearing.

station [3] at which it sold gasoline, oil, grease, tires, tubes, batteries, auto radios, auto accessories of all kinds, safety shoes and boots, candy and ice cream, all of which were articles also sold by the Store company. The Coal company collected, by deductions from wages, the amounts due by its employes for purchases at this station and did so prior to deducting amounts due by employes to the Store company. The court found that the Store company lost $370.04 by failure of the Coal company to collect the Store company's accounts at this station to the exclusion of its own, and, in appellant's brief, appellant states "no complaint is made on this appeal of the action of the court in awarding to plaintiff damages in the amount of $370.04 for failure of defendant to collect" these accounts. The evidence shows that the Coal company did a large business at this station, one of the findings being that the Coal company collected from semi-monthly pays of its employes from June, 1939, to June 15, 1941, the sum of $35,621.62. The conduct of such a business was not within the permission to install a gasoline pump but, as the court concluded, was in violation of the contract of June 22, 1937. Such competition was in plain violation of the contract. The evidence supports the amount of the damages ordered to be paid. In its legal aspects the case is without difficulty. Defendant's assignments of error must be overruled, subject to amendment of the decree.

No. 55. In reviewing the record on plaintiff's appeal, it is necessary to consider additional facts not involved in considering the effect of the business done by the defendant at Trout Run Service Station in Portage Township. In 1939, the Coal company acquired a mine at Beaverdale, about six miles from Portage, and began

---

[3] Mr. Crichton, President of the Coal company, testified, "It is a glazed brick front, tile building, a regular gasoline station, a place to grease cars and render all sorts of service, small repairs, . . ."

producing coal there in July, 1940. Late in 1940 the Coal company established a store in Beaverdale under the name Vindex Stores, Inc., in competition with the Store company (in the words of plaintiff's brief) "insofar as employees of the Beaverdale mine were concerned." This competition affected plaintiff's business adversely and the only question now is whether conducting the store at Beaverdale violated the contract of June 22, 1937. When that contract was made the parties contemplated the circumstances then existing and provided for their future relations in those circumstances. Defendant's mining operations were in Portage Township; it had none at Beaverdale. In considering whether the agreement against competition, as expressed in the contract, was intended by the parties to deprive the defendant of the right to conduct a. general store at Beaverdale, the court applied the familiar rule requiring the contract to be construed in the light of the subject matter and conditions existing at the time of its execution: *Silverthorn v. Silverthorn*, 276 Pa. 579, 582, 120 A. 656. That the parties had in mind the Coal company's mining plant in Portage Township is clear from the provision in their contract (quoted above) for the termination of the contract before the expiration of 5 years if "the Coal Company shall sell its mining plant." They made no provision for plants subsequently acquired such as the one at Beaverdale; they had in mind the plant in Portage Township.

No. 14. Decree affirmed with the understanding that the mistake in the decree ordering the account to July 31 be corrected to read July 1; costs below to be paid by appellant Coal company.

No. 55. Decree affirmed.

Each party shall pay its own costs on appeal.